293 So.2d 123 (1974)
Maurice JABOUR and Frances Jabour, His Wife, Appellants,
v.
Orsolina TOPPINO, Appellee.
No. 73-740.
District Court of Appeal of Florida, Third District.
April 9, 1974.
*124 Feldman & Eden, Key West, for appellants.
Neblett & Sauer, Key West, Joseph C. Jacobs, Tallahassee, for appellee.
Before CARROLL, HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
Appellants, defendants in the trial court, seek review of a final judgment declaring that the defendants no longer have any rights on the plaintiff's land and enjoining them from any use thereon.
Following a nonjury trial, the court requested memoranda of law and oral argument from counsel and thereafter rendered its decision. We adopt the views expressed in the written opinion of Judge Lester, the able Circuit Judge for Monroe County, which reads as follows:

"FINAL JUDGMENT
"Plaintiff seeks a judicial declaration that she has rightfully revoked an agreement between plaintiff and defendants dated October 23, 1963, and that the defendants no longer have any rights in the property owned by the plaintiff, which was the subject of said agreement. The plaintiff further seeks an injunction enforcing such a determination.
"The plaintiff and defendants are now adjoining landowners due to purchases made by defendants from plaintiff of certain parcels in Square 11, City of Key West.
"The controversy between the parties to this suit concerns Parcel D and Parcel F as shown in plaintiff's Exhibit 1. Defendants purchased Parcel D from plaintiff in July 1959, and at that time no Easement, license or any other interest in land was given over any of plaintiff's land.
"In October, 1963, defendants purchased Parcel F from plaintiff. Situated on Parcel F is a warehouse which extends practically to the property line. At the time of the conveyance, connected to the warehouse but located across the property line and upon plaintiff's property, was a small loading ramp or platform.
"In connection with the purchase of Parcel F, on October 23, 1963, the parties executed an Agreement for Easement. The boundaries of said Easement are delineated on plaintiff's Exhibit 1, in red ink. Plaintiff contends that the buffer zone around *125 Parcel D was so delineated because of the defendants' prior aggressive attempts to extend and improve the ramp adjacent to said Parcel D. It is admitted that defendants have access to said Parcel F over other lands which they own, however, the northerly entrance to Parcel F over plaintiff's land made it more convenient to defendants to fully utilize the building located on Parcel F for a moving and storage warehouse.
"The agreement recognizes that there were various traffic, ingress, egress and parking problems created by the sales of land by plaintiff to defendants. The stated purpose of the instrument is to clearly delineate the various permitted uses of plaintiff's land by the defendants and place conditions and limitations upon these uses.
"The determinative parts of the agreement are as follows:
"`NOW, THEREFORE, in consideration of the premises recited, ORSOLINA TOPPINO, a widow, does hereby grant an easement for ingress and egress only, and for no other use, over the hereinabove described land to MAURICE JABOUR and/or FRANCES JABOUR, to run personally to said MAURICE JABOUR and/or FRANCES JABOUR, or their assigns, but not as a convenant running with the land.
"`It is a condition of this Easement that the GRANTEE'S rights to use the said land for ingress and egress is inferior and subordinate to the use of the said land by GRANTOR or her lessees or assigns, and that in exercising the use of said land for ingress and egress GRANTEE will not interfere with the activities and operations of GRANTOR or her lessees or assigns, otherwise the rights of GRANTEE under this Easement shall cease and determine.
"`It is a further condition of this Easement that GRANTEE shall not use said land for parking any vehicle, but only for ingress and egress and that any loading or unloading of vans or vehicles by GRANTEE shall be accomplished expeditiously, and that during such loading or unloading GRANTEE'S vans or vehicles shall be so positioned as to cause the minimum possible interference to traffic or movement on said land of GRANTOR.
"`It is a further condition of this Easement that GRANTEE may continue to use ramps or loading platforms which extend from GRANTEE'S buildings on to GRANTOR'S described land, provided that the only such ramps or loading platforms to be used shall be those which were in place when the land and buildings were conveyed or contracted to be conveyed from GRANTOR to GRANTEE. The said use of said ramps or loading platforms is expressly declared to be permissive and the right of GRANTEE to use the same may be revoked by GRANTOR.
"`The temporary waiver of any condition of this Easement shall not be construed as invalidating any other condition of this Easement and shall not deprive GRANTOR of any rights reserved herein or otherwise afforded in law and equity to GRANTOR.'"
"Subsequent to the conveyance agreement in October, 1963, the Defendants enlarged the ramp adjacent to Parcel F, but located upon plaintiff's property. This enlargement of the ramp was made despite plaintiff's demands that it not be made and caused interference with plaintiff's tenants' use of plaintiff's waterfront property.
"The complaint in this case alleges that the relations between plaintiff and defendants are and have been adverse because of defendants' failure to pay on notes and mortgages owed plaintiff, and the defendants' aggressive acts of encroachment upon plaintiff's land and the abuse by defendants of the provisions of the agreement by interference with the use of plaintiff's land by plaintiff's tenants.
"These violations prompted the plaintiff, through her attorneys, in a letter dated May 4, 1972, to revoke the rights granted *126 the defendants under the October 23, 1963 agreement and to demand the removal of the unauthorized ramps.
"Plaintiff alleges that the defendants continue to use the aforesaid revoked permissive rights, continue to interfere with plaintiff's tenants and have made no attempt to remove the unauthorized construction from plaintiff's land, and further that these actions constitute a continuing trespass and seriously interfere with plaintiff's rightful use of her property.
"Plaintiff seeks a declaration that defendants violated the October 23, 1963 agreement and that said agreement is terminated by plaintiff's revocation. Likewise plaintiff seeking an order requiring that defendants remove the unauthorized encroachments and preventing the defendants from any further interference with the rightful use of her property by plaintiff or her tenants.
"Obviously, the main issue in this case is whether the plaintiff can revoke the defendants' permissive rights under the October 23, 1963 agreement. That instrument itself could not more clearly state that the rights granted in it run personally to the defendants and are not covenants running with the land. It should also be noted that the instrument applies only to the defendants or their assigns.
"`There are no words in the agreement to indicate that the rights of the respective parties therein are to extend to their successors in title. In other words, the covenants contained in the agreement are personal covenants, rather than covenants running with the respective lots.'" Burdine v. Sewell, 92 Fla. 375, 109 So. 648 at 652 (1926).
"Another affirmation of the personal, terminable nature of the rights created in the agreement, is to be found in the conditions imposed upon these rights. The agreement explicitly states that the defendants' exercise of the rights created therein may not interfere with the property rights of the plaintiff or her tenants. Likewise defendants may not use the plaintiff's land for parking any vehicle nor may defendants use any loading ramps other than those in place at the time the land was conveyed.
"The conditions in the October 23, 1963 agreement serve the same purpose as the words "for so long as" served in the agreement litigated in Burdine, to wit, to create a limitation upon the duration of the rights listed in the agreement.
"Also in the agreement is a phrase which allows the plaintiff to revoke the use of the loading platforms (and as a consequence the ingress and egress rights). This also manifests an intent to limit defendants' rights under the agreement.
"Defendants argue that the instrument creates an easement and since easements cannot be revoked, the plaintiff may not revoke defendants' rights under the agreement. It should now be emphasized that in the area of easements (as well as many other areas of law) the judicial process has developed rules which are to operate to `fill in the blanks' where the parties have not clearly stated their intentions. On the other hand, where the parties have clearly stated their intentions the court must give effect to those intentions. Kotick v. Durrant, 143 Fla. 386, 196 So. 802 (1940).
"The courts may not fill in the blanks where there are none to fill.
"`Where the parties have fully manifested an intention to limit the duration of the right of passage, it is the duty of the courts to enforce that limitation and not to disregard it by giving a perpetual right where only a determinable one was intended." Burdine, 109 So. at 654.
"Thus this Court is bound to enforce the provisions of the agreement between plaintiff and defendants. The defendants concede that the plaintiff can revoke *127 the agreement upon breach of the conditions found therein. One such condition is that the defendants are limited to the use of the ramp in place at the time of the conveyance. The enlargement of the ramp facilities (especially in light of the protest by the plaintiff) constituted a violation of the agreement.
"It is obvious that the continued existence of the rights created in the agreement would greatly impair plaintiff's ability to sell her property. The right to freely alienate land is a keystone in the property rights of American citizens. The agreement clearly subordinates the defendants' rights to the property rights of the plaintiff. Thus the continued use of the rights permissively given to defendants would `interfere' with the plaintiff's rights in her property.
"The defendant maintains that the plaintiff may not revoke the agreement without cause. The essence of the agreement is that the defendants may cross plaintiff's land to use the loading ramps which, although attached to defendants' building, lie upon plaintiff's land. The agreement specifically states that plaintiff may revoke the use of the loading platforms. In the context of the whole agreement, if the defendant cannot use the loading platforms then any ingress and egress rights would be totally useless. Therefore, it is logical to conclude that the parties intended that plaintiff may revoke the use of the loading platforms at will and such a revocation would make moot the issue of the existence of any other rights in the defendants.
"Both sides argued strenuously on the issue of whether the agreement creates a license or an easement. The fact that the agreement is entitled "Agreement for Easement" is of little consequence if in fact the instrument shows that the parties intended to create something other than an easement. The famous case of Baseball Publishing Co. v. Bruton, 302 Mass. 54, 18 N.E.2d 362, 119 A.L.R. 1518 (1938) involves an instrument entitled `Lease' which the court found did not create a lease but rather an easement in gross limited to five years duration.
"Burdine is the leading Florida authority as to the distinction between licenses and easements. Since the language in the agreement clearly shows that the plaintiff may revoke the permissive rights under the facts of this case, many of the problems in Burdine are not presented here. However, in light of Burdine, the intention of the parties found in their agreement and the facts of this case indicate that a mere license was created on October 23, 1963, not an easement.
"The plaintiff has legally exercised her rights under the agreement in question and her revocation is valid; it is therefore:
"CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court:
"Defendants no longer have any rights upon or across plaintiff's land and are enjoined from the use of any rights previously held by the defendants.
"Defendants are to remove any encroachments they have made upon plaintiff's land, specifically any ramps and/or loading platforms, within a reasonable period of time or the defendants must suffer their removal by plaintiff.
"DONE, ORDERED, ADJUDGED and DECREED at Key West, Florida, this March 28 A.D. 1973."
We agree with the trial court's application of the law to the facts of this case; and therefore, the judgment appealed is affirmed.
Affirmed.